UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREATER MICHIGAN PLUMBING
AND MECHANICAL CONTRACTORS
ASSOCIATION, INC., UA LOCAL 190
PLUMBERS/PIPEFITTERS/SERVICE
TECHNICIANS/GAS DISTRIBUTION,
UA LOCAL 190 JOINT TRAINING COMMITTEE,
UA LOCAL 190 PENSION TRUST,
UA LOCAL 190 DEFINED CONTRIBUTION
TRUST, UA LOCAL 190 SUB TRUST,
UA LOCAL 190 HEALTH AND WELFARE
TRUST, UA LOCAL 190 INDIVIDUAL
HRA TRUST, and UA LOCAL 190 SCHOLARSHIP
TRUST,

                                                                     Civil Case No. 17-10533
        Plaintiffs,                                 Honorable Linda V. Parker

v.

PRECISION POWER AND GAS, LLC,
PRECISION PIPELINE, LLC,
PRECISION PIPELINE SERVICES, LLC,
and MATTHEW UPP,

        Defendants.
_____/

**<u>OPINION AND ORDER DENYING DEFENDANTS' MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE
ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN
DISTRICT OF OHIO, EASTERN DIVISION</u>**

       This is an action seeking an audit and to collect fringe benefit contributions and a withdrawal penalty pursuant to a collective bargaining agreement ("CBA") signed by Defendant Precision Power and Gas, LLC ("Precision Power"). The

matter is presently before the Court on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a). (ECF No. 32.) The motion has been fully briefed. (ECF Nos. 33, 34.) Finding the facts and legal arguments sufficiently developed in the parties' briefs, the Court is dispensing with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I. Factual and Procedural Background

Plaintiff Greater Michigan Plumbing and Mechanical Contractors Association, Inc. is a multi-employer association representing contractors in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and an employer within the meaning of Section 3(5) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(5). (Am. Compl. ¶ 2, ECF No. 6 at Pg ID 48.) Plaintiff UA Local 190 Plumbers/Pipefitters/Service Technicians is a labor organization representing employees in an industry affecting commerce within the meaning of the LMRA and is an employee organization within the meaning of ERISA. (*Id*. ¶ 3, Pg ID 48.) The remaining plaintiffs are trustees of pension and/or welfare benefit funds to which contributions are required under the CBA. (*Id*. ¶¶ 6-10, Pg ID 49.) The various funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). (*Id*. ¶ 11, Pg ID 50.)

The corporate defendants (Precision Power, Precision Pipeline, LLC, and Precision Pipeline Services, LLC) are Ohio limited liability companies. (*Id.* ¶¶ 13-15, Pg ID 50.) Precision Power and Precision Pipeline maintain their principal offices at 10 Whiley Road, Lancaster, Ohio, and have the same phone number. (*Id.* ¶¶ 13, 14, 43, Pg ID 50, 54.) During the period relevant to this lawsuit, Precision Power was listed on government filings as a "doing business as" name for Precision Pipeline. (*Id.* ¶ 44, Pg ID 55.) Precision Power's employees worked in facilities and used equipment, trucks, and machinery with Precision Pipeline identifiers. (*Id.* ¶¶ 45, 46, Pg ID 55.) They also received their wage checks and payment records listing "Precision Pipeline, LLC" as payor. (*Id.* ¶ 47, Pg ID 55.)

Defendant Matthew Upp ("Mr. Upp") is a citizen of Ohio and the sole owner and managing member of Precision Power and Precision Pipeline. (*Id.* ¶¶ 16, 38, 40, Pg ID 50, 54.) Mr. Upp's wife, Bonnie Upp, is the sole owner and managing member of Defendant Precision Pipeline Services, LLC, which was formed on January 27, 2015, in the State of Ohio. (*Id.* ¶¶ 49-50, Pg ID 55.) All three corporate defendants are construction contractors involved in the industry of building and maintaining pipeline distribution systems, including natural gas distribution lines. (*Id.* ¶¶ 39, 41, 51, Pg ID 54, 56.)

On April 14, 2014, Mr. Upp signed a CBA on behalf of Precision Power pursuant to which Precision Power agreed to pay specified wages and make fringe

benefit contributions to Plaintiffs' funds based on the covered hours worked by Precision Power's union employees.[1] (*Id.* ¶¶ 21-34, Pg ID 51; *see also* Am. Compl., Ex. 1, ECF No. 6-2.) Covered work includes "all gas distribution pipeline construction work coming within the jurisdiction of Local 190[.]" (Am. Compl., Ex. 1 at 1, ECF No. 6-2 at Pg ID 65.) The CBA required Precision Power to file monthly reports listing the identify of, hours worked by, and fringe benefit contributions owed for each union member employed by Precision Power during a given month. (Am. Compl. ¶ 28, ECF No. 6 at Pg ID 52.) Precision Power also was obligated under the CBA to provide all payroll records necessary to determine its obligations under the contract. (*Id.* ¶ 29, Pg ID 52.) On October 29, 2015, Mr. Upp signed a second CBA effective from September 1, 2015 through May 31, 2018. (*Id.* ¶ 21, Pg ID 41; *see also* Am. Compl., Ex. 2, ECF No. 6-3.)

Plaintiffs allege that in early 2016, Precision Power failed to make required plan contributions. (Am. Compl. ¶¶ 25-27, ECF No. 6 at Pg ID 52.) Plaintiffs further allege that Precision Power failed to submit payroll records required under the CBA throughout 2016, despite requests from Plaintiffs' auditor. (*Id.* ¶¶ 30-32, Pg ID 53.) At the end of 2016, Precision Power also laid off its union employees and ceased to hire union labor for work covered under the CBA, despite Precision

---

[1] Plaintiffs attach the addendum to the CBA to their Amended Complaint, which Mr. Upp signed on April 18, 2014. (Am. Compl., Ex. 1, ECF No. 6-2.)

Power's continued performance of covered work in Ohio. (*Id.* ¶¶ 35, 36, Pg ID 53.) An employer ceasing all operations by union employees under a CBA, but that continues the same kind of work within the jurisdiction, is liable for a withdrawal penalty under ERISA. *See* 29 U.S.C. §§ 1381-83.

Plaintiffs therefore filed this lawsuit against Precision Power on February 17, 2017, seeking to conduct an audit to determine the amounts owing under the CBA and to collect those amounts. (*See* Compl., ECF No. 1.) Plaintiffs filed an Amended Complaint on June 12, 2017, adding Precision Pipeline, Precision Pipeline Services, and Mr. Upp as defendants. (*See* Am. Compl., ECF No. 6.) After Defendants were granted extensions of time to respond to Plaintiffs' pleadings and the case was temporarily stayed by stipulation of the parties with the intended goal of completing an audit, Defendants filed the pending motion to dismiss. As previously indicated, the motion has been fully briefed and is now ripe for resolution.

## II. Defendants' Motion to Dismiss

### A. Applicable Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is

5

entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## B. Defendants' Arguments and Analysis

### 1. Dissolution & Bankruptcy

Defendants first seek dismissal on the basis that Precision Power was dissolved as a corporate entity on December 21, 2016. Defendants then argue that Precision Power should be dismissed because it filed a Chapter 7 bankruptcy petition and was officially discharged on August 18, 2017. Defendants argue that Plaintiffs never sought relief from the bankruptcy court stay and, despite being listed as possible creditors of Precision Power, never appeared in the bankruptcy proceedings.

As Plaintiffs point out, Defendants cite no authority for Precision Power's dismissal due to its dissolution or insolvency. In fact, under Ohio law, the dissolution of an Ohio limited liability company does not relieve the company from its obligation to pay "all contingent, conditional, or unmatured claims and obligations that are known to the company." Ohio Revised Code Ann. § 1705.46(B) (West 1994). Further, "dissolution of a limited liability company does not … [p]revent commencement of a proceeding by or against the company in its name." *Id.* § 1705.45(B)(2).

Defendants also fail to demonstrate that Precision Power should be dismissed due to its bankruptcy filing. Although a discharge in bankruptcy could enjoin legal and equitable claims against a debtor, *see* 11 U.S.C. §§ 101(5)(B), 524(a), the Bankruptcy Code states that "[t]he court shall grant the debtor a discharge—(1) *unless* the debtor is not an individual." 11 U.S.C. § 727(a)(1) (emphasis added). A corporation or other entity, such as a limited liability company, is not an "individual." *See In re Liberator Tech., LLC*, No. 08-4137, 2010 BL 185155 (Bankr. E.D. Mich. Mar. 11, 2010) (citing *In re JAC Family Found.*, 356 B.R. 554, 556-57 (Bankr. N.D. Ga. 2006)). In other words, "[u]nder the Bankruptcy Code, a discharge in a chapter 7 case is given to individual debtors only, not to partnerships or corporations." *In re Diversified Venture*, No. 97-22705, 1999 WL 35028892, at *1 (W.D. Tenn. Feb. 9, 1999) (citing 11 U.S.C. § 727(a)(1)). Indeed, the bankruptcy record reflects that Precision Power's Chapter 7 case was closed without its liabilities discharged, with the notation of "Discharge Not Applicable." (Defs.' Mot., Ex. C, ECF No. 32-1 at Pg ID 298.)

### 2. Liability of Non-Signatory Defendants

Defendants seek dismissal of Precision Pipeline and Precision Pipeline Services because they were not signatories to the CBA. Defendants therefore contend that these defendants are not liable to Plaintiffs. Defendants further

contend that Plaintiffs' pleadings fail to expressly assert "claims" against the non-signatory entities or a specific dollar amount owed by them.

In their Amended Complaint, however, Plaintiffs assert that the non-signatory defendants are liable under the CBA as alter-egos of Precision Power. The alter ego doctrine prevents employers from evading their collective bargaining obligations by merely changing their corporate form. *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986). "The doctrine operates to bind an employer to a collective bargaining agreement if it is found to be an alter ego of a signatory employer." *Trustees of Detroit Carpenters Fringe Benefit Funds v. Indus. Contracting, LLC*, 581 F.3d 313, 318 (6th Cir. 2009).

Plaintiffs allege sufficient facts to demonstrate that Precision Pipeline and Precision Pipeline Services are alter-egos of Precision Power.[2] It is irrelevant that Plaintiffs do not specify a dollar amount owed by Defendants, as Plaintiffs allege that they cannot calculate an amount as a result of Defendants' alleged failure to

---

[2] The basic inquiry in determining whether the alter ego doctrine applies is "whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *NLRB v. Fullerton Transfer & Storage, Inc.*, 910 F.2d 331, 336 (6th Cir. 1990). In conducting this analysis, courts consider "whether two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 759 (6th Cir. 1996) (quoting *Fullerton Transfer*, 910 F.2d at 336).

9

comply with the auditing requirements under the CBA. Plaintiffs specifically request an audit to determine the monies due.

### 3. Exhaustion of Administrative Remedies

Defendants next argue that Plaintiffs' claims are precluded because they failed to adhere to the formalities required by ERISA prior to filing suit. Citing Sections 4219(b)(2) and 4221 of ERISA, 29 U.S.C. §§ 1399(b)(2), 1401, Defendants assert that "there is an entire administrative procedure leading to binding arbitration for any claims related to unfunded pension liabilities," which Plaintiffs failed to follow. (*See* Defs.' Br. in Supp. of Mot. at 5, ECF No. 32 at Pg ID 273.)

The statutory sections Defendants cite relate to an employer's withdrawal liability from a multi-employer benefit plan, not every action for claimed unfunded pension and/or welfare liabilities. *See* 29 U.S.C. §§ 1381, 1403. Those provisions were added when Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") to amend ERISA. *See* 29 U.S.C. §§ 1381-1453. The amendment was in response to Congress' findings that "ERISA did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984). To that end, the MPPAA assesses "withdrawal liability" against an

employer that withdraws from a multiemployer pension plan." *ILGWU Nat'l Ret. Fund v. Levy Bros. Forcks, Inc.*, 846 F.2d 879, 881 (2d Cir. 1988) (citing 29 U.S.C. §§ 1381, 1391). "[T]hat is, the employer is required to continue funding its proportionate share of the plan's unvested benefits." *Id*.

The MPPAA sets forth procedures the plan sponsor must follow when an employer withdraws from a multiemployer benefit plan, including "determine[ing] the amount of the employer's withdrawal liability" and "notify[ing] the employer of the amount of the withdrawal liability." 29 U.S.C. § 1382. The statute also establishes steps the employer must follow upon receiving notice of its withdrawal liability. *Id*. § 1399(b)(2)(A), (c)(2). Under the MPPAA, disputes between an employer and the plan sponsor concerning withdrawal liability are to be resolved through arbitration. § 1401(a)(1).

Plaintiffs, however, are not seeking a determination of Precision Power's withdrawal liability in this lawsuit. Nor are they seeking to litigate a dispute between themselves and Precision Power regarding the amount of the latter's withdrawal liability. Instead, Plaintiffs are asking the Court to find that Defendants are alter-egos of one another and thus jointly liable for any withdrawal liability and that Mr. Upp is personally liable under a piercing the corporate veil theory. (Am. Compl. at 16-17, ECF No. 6 at Pg ID 61-62.) Further, Plaintiffs are asking the Court to order Defendants to submit the books and records necessary to

determine the withdrawal liability.³ (*Id.*) The cited arbitration provisions do not apply to any of these issues.

As such, Plaintiffs were not required to exhaust any administrative remedies prior to filing this lawsuit.

### 4. Fraud Claim Against Mr. Upp

Defendants next argue that Plaintiffs fail to plead their fraud "claim" against Mr. Upp with the particularity required under Federal Rule of Civil Procedure 9(b). Defendants therefore argue that the "claim" must be dismissed.

As an initial matter, Plaintiffs are not asserting a claim of fraud against Mr. Upp. Rather, they are seeking to hold Mr. Upp personally liable for Precision Power's CBA obligations under a piercing-the-corporate-veil theory. This theory creates an exception to the presumption that "[a] corporation is … a separate entity from its shareholders …."⁴ *Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 384 (6th Cir. 1991) (quotation marks and citations omitted). "[A] court can pierce the corporate veil if 'there are substantial reasons

---

³ Only once Plaintiffs determine the amount of Defendants' withdrawal liability and notify Defendants of the amount sought, and only then if Defendants dispute the amount, do the MPPAA's arbitration provisions apply.

⁴ Courts have nevertheless "held that deference to the corporate identity may be particularly inappropriate in relation to ERISA because Congress enacted ERISA in part to protect employees who were being deprived of anticipated benefits by a corporate sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 705 (6th Cir. 1988) (citing *Alman v. Danin*, 801 F.2d 1, 3-4 (1st Cir. 1986)).

for doing so' after weighing: (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704 (6th Cir. 1988) (quoting *Contractors, Laborers, Teamsters & Eng'rs Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir. 1985)).

The Sixth Circuit Court of Appeals has held that Rule 9(b) applies to allegations of fraud made in support of an attempt to pierce the corporate veil. *Southeast Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (citing *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002)). Rule 9(b) generally requires a plaintiff to plead the specific "time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). Plaintiffs have sufficiently satisfied these pleadings requirements in their Amended Complaint.

Plaintiffs allege that in early 2014, Mr. Upp used Precision Power—an empty-shell entity—to secure a job contract requiring union labor but then avoided the full obligations of the CBA. (Am. Compl. ¶¶ 54-56, ECF No. 6 at Pg ID 56.) Plaintiffs further allege that Mr. Upp subsequently disclaimed the CBA and

13

asserted that the union members had worked for Precision Pipeline—which was not bound to the CBA—rather than Precision Power, and that Precision Power no longer existed as an entity. (*Id.* ¶ 57, Pg ID 57.) According to Plaintiffs, Mr. Upp intentionally and fraudulently misled Plaintiffs and Precision Power's union employees to believe that the latter's work was fully covered under the CBA and, therefore, benefit contributions would be made for that work. (*Id.* ¶ 58, Pg ID 57.) Plaintiffs and the employees detrimentally relied on Mr. Upp's misrepresentation, while Mr. Upp reaped the profits (i.e. the work secured under the pretense that it was union labor covered under the CBA and the monies he retained as Precision Power's sole owner that should have been contributed to Plaintiffs' funds). (*Id.*) As discussed earlier, it is irrelevant that Plaintiffs do not plead the amount of the contributions due under the CBA as they cannot make that determination without obtaining the payroll records the agreement required Precision Power and Mr. Upp to provide.

### 5. Case or Controversy Regarding the Audit Issue

In their reply brief, Defendants assert for the first time that there is no case or controversy regarding the audit issue because Precision Power has been and is willing to have Plaintiffs conduct an audit and has submitted payroll records to Plaintiffs. As an initial matter, "the Sixth Circuit repeatedly has recognized that arguments raised for the first time in a party's reply brief are waived." *See United*

14

*States v. Lopez-Medina*, 461 F.3d 724, 743 (6th Cir. 2006) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also Lexicon, Inc. v. Safeco Ins. Co. of Am., Inc.*, 426 F.3d 662, 676 (6th Cir. 2006). In any event, Plaintiffs allege in their Amended Complaint that they have not received the payroll records they need to complete an audit. This allegation is assumed true for purposes of ruling on Defendants' Rule 12(b)(6) motion. Thus a "case or controversy" remains.

### III. Motion to Transfer Venue

In the event the Court denies their motion to dismiss, Defendants ask the Court to transfer this matter to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Defendants contend that the factors guiding a court's discretion in deciding whether to transfer a case weigh in favor of granting their request. Plaintiffs respond that the forum selection clauses in the trust agreements, to which employers are bound pursuant to the terms of the CBA, dictate that this lawsuit should proceed in the Eastern District of Michigan.

#### A. Applicable Law

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In a typical case, the court's discretionary decision whether to transfer a case under § 1404 is based on an

individualized, case-by-case consideration of private- and public-interest factors.[5] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart*, 487 U.S. at 31). In that instance, the Supreme Court has instructed that "'a valid forum-selection clause should be given controlling weight in all but the most exceptional cases.'" *Id.* (quoting *Stewart*, 487 U.S. at 33) (brackets omitted). In other words, "[w]hen parties have contracted in advance to litigate disputes in a particular forum … [i]n all but the most unusual cases, … 'the interest of justice' is served by holding parties to their bargain." *Id.* at 66. Further, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.*

---

[5] The private interest factors include "'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Public-interest factors include "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.*

First, the deference generally granted to the plaintiff's choice of forum does not apply. *Id.* ("[T]he plaintiff's choice of forum merits no weight."). Second, private-interest factors should not be considered in deciding whether to transfer venue and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. The "court may consider arguments about public-interest factors only." *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules[.]" *Id.*

### B. Analysis

The CBAs signed by Mr. Upp on behalf of Precision Power provide that signatory employers are bound by the rules and regulations promulgated by the Trust Funds to which contributions are made under the agreement. (*See* Am. Compl., Ex. 1 § VII(G), ECF No. 6-2 at Pg ID 75; *Id.*, Ex. 2 § V(B), ECF No. 6-3 at Pg ID 87.) Those trusts contain forum-selection clauses designating the United States District Court for the Eastern District of Michigan as "hav[ing] sole and exclusive jurisdiction over any lawsuit or other judicial proceeding relating to or arising from this Agreement." (Defs.' Resp., Ex. B § 12.10, ECF No. 33-3 at Pg

17

ID 391; Ex. C § 12.10, ECF No. 33-4 at Pg ID 429; Ex. D § 12.10, ECF No. 33-5 at Pg ID 469; Ex. E § 12.10, ECF No. 33-6 at Pg ID 509; Ex. F. § 12.10, ECF No. 33-7 at Pg ID 549.)

Defendants do not dispute the existence of these forum-selection clauses. They argue, however that "these clauses are part of contracts of adhesion." (Pls.' Reply Br. at 7, ECF No. 34 at Pg ID 589.) As explained by the District Court for the District of Columbia, this is not a valid defense:

> Courts of appeals have unanimously regarded ERISA as imposing a limitation on the defenses available to an employer when sued by an employee benefits plan for failing to contribute. *See, e.g., La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998); *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1443-44 (9th Cir. 1995); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992); *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). "[O]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Benson*, 907 F.2d at 314. …
>
> Indeed, the very proposition that a collective bargaining agreement may be deemed a contract of adhesion is without merit. *See Brown v. Retirement Comm. of Briggs & Stratton Retirement Plan*, 797 F.2d 521, 529 (7th Cir. 1986) (refusing to construe a contract as one of adhesion where it was a product of collective bargaining between union and employer); *Waggoner v. Dallaire*, 649 F.2d 1362, 1367 (9th Cir. 1981) (district court erred as a matter of law in finding a contract of adhesion because "parties to a collective bargaining agreement are conclusively presumed to have equal bargaining strength"); *Mic-Ron Gen. Contractors, Inc. v. Trs. of New York City Dist. Council of Carpenters Benefit Funds*, 908 F. Supp. 208, 213 n. 3 (S.D.N.Y. 1995) (employer cannot dispute its

18

> obligations under collective bargaining agreement by condemning the agreement as a contract of adhesion).

*Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co.*, 288 F. Supp. 2d 22, 29 (D.D.C. 2003) (footnote omitted). The Court therefore finds that the forum-selection clauses in the trust agreements are valid.

In that instance, pursuant to *Atlantic Marine*, those clauses dictate where this lawsuit should proceed unless this is the "unusual" or "exceptional" case where a forum-selection clause is not given controlling weight. Further, the private interest factors which Defendants argue weigh in favor of transferring this action to the Southern District of Ohio are not relevant. Defendants do not identify a single public interest factor weighing in favor of granting their motion to transfer and in fact concede that in this ERISA case, "it cannot be said that one [c]ourt is better than another." (Defs.' Br. in Supp. of Mot. at 14, ECF No. 32 at Pg ID 282.) In short, Defendants fail to convince the Court that this is the "unusual" or "exceptional" case requiring the transfer of the action to a forum other than that chosen by the parties.

## IV. Conclusion

In summary, the Court concludes that Plaintiffs' Amended Complaint contains sufficient factual allegations to state a valid claim for relief against Defendants. The Court also concludes that the forum-selection clauses in the trust

agreements, identifying this district as the selected forum, must be given controlling weight.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss for Failure to State a Claim or, in the alternative, to Transfer Venue to [the] Southern District of Ohio Eastern Division (ECF No. 32) is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 20, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 20, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager